UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DEVIN M. KNAUB,                    :
                                   :
          Plaintiff               :    No. 4:08-CV-1319
                                   :
     vs.                          :    (Complaint Filed 7/11/08)
                                   :
MICHAEL J. ASTRUE,                :
COMMISSIONER OF SOCIAL            :    (Judge Muir)
SECURITY,                         :
                                   :
          Defendant               :

**ORDER**
January 13, 2009

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Devin M. Knaub's claim for social security disability insurance benefits and childhood disability benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and is "insured," that is, the individual has worked long enough and paid social security taxes. In order to be eligible for disability insurance benefits, an individual must be disabled and also insured. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Knaub met the insured status requirements of the Social Security Act through June 30, 2006. Tr. 19.[1] In order to establish

_____

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on September 26, 2008.

entitlement to disability insurance benefits Knaub must establish that he was disabled on or before that date.  42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

To qualify for Childhood Disability Benefits, a claimant must have been disabled before age 22 and continue to be disabled, have a parent who is on Social Security disability or retired and collecting Social Security benefits, or the claimant's parents must have died and the parents were fully insured when they died. In other words the child is entitled to benefits based on the parents' work record.  20 C.F.R. § 404.350.  It is undisputed that Knaub "meets all of the nondisability requirements of Childhood Disability Benefits set forth in . . . the Social Security Act." Tr. 26.  The issue in dispute is whether or not Knaub is suffering from a disability which lasted more than 12 months and prevents him from engaging in substantial gainful work activity.

Knaub, who was born on November 29, 1959, claims that he became disabled on January 1, 1999, because of certain mental and physical disorders.  At the time of the onset of his disability he was in the 7th grade.  Tr. 355.  It is alleged that Knaub suffers from agoraphobia, panic disorder, anxiety, depression, attention deficit hyperactivity disorder, irritable bowel syndrome, migraine headaches and back problems.

On April 3, 2004, Knaub protectively filed an application for disability insurance benefits and childhood disability benefits. Tr. 86-91 and 579-584.   After his claims were denied initially, a hearing was held on July 20, 2005, before an administrative law judge. Tr. 618-679.   On December 19, 2005, the administrative law judge issued a decision denying Knaub's applications for benefits. Tr. 19-26.   On February 15, 2006, Knaub filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 14-15.   On May 14, 2008, the Appeals Council concluded that there was no basis upon which to grant Knaub's request for review. Tr. 8-11.   Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On July 11, 2008, Knaub filed a complaint in this court requesting that we reverse the decision of the Commissioner denying him disability benefits.   The Clerk of Court assigned responsibility for this case to Judge Munley but referred it to Magistrate Judge Mannion for preliminary consideration.   On September 12, 2008, the case was reassigned to the undersigned judge for disposition.

The Commissioner filed an answer to the complaint and a copy of the administrative record on September 26, 2008. Pursuant to the Local Rules, Knaub filed his brief on November 10, 2008, and the Commissioner filed his brief on December 12, 2008.   The

appeal[2] became ripe for disposition on December 29, 2008, when Knaub filed a reply brief.

Our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, we have plenary review of all legal issues decided by the Commissioner. See Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v.

---

2.   Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."   M.D.Pa. Local Rule 83.40.1.

Commissioner of Social Security, 529 F.3d 198, 203 (3d Cir. 2008);

Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the

decision of the Commissioner must scrutinize the record as a

whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981);

Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

The Commissioner utilizes a five-step process in

evaluating disability insurance claims.  See 20 C.F.R. §404.1520;

Poulos, 474 F.3d at 91-92.[3]  This process requires the

Commissioner to consider, in sequence, whether a claimant (1) is

engaging in substantial gainful activity[4] (2) has an impairment

that is severe or a combination of impairments that is severe,[5]

(3) has an impairment or combination of impairments that meets or

equals the requirements of a listed impairment,[6] (4) has the

residual functional capacity to return to his or her past work and

---

3.  The five-step sequential evaluation process set forth in
§404.1505 applies to applications for disability insurance
benefits and childhood disability benefits.  20 C.F.R. §
404.1520(a)(2)("These rules apply to you if you file an
application for a period of disability or disability insurance
benefits (or both) or for child's insurance benefits based on
disability.").

4.  If the claimant is engaging in substantial gainful activity,
the claimant is not disabled and the sequential evaluation
proceeds no further.

5.  If the claimant does not have a severe impairment or
combination of impairments, the claimant is not disabled and the
sequential evaluation proceeds no further.

6.  If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
claimant is disabled.  If not, the sequential evaluation process
proceeds to the next step.

(5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[7]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In this case the administrative law judge at step one found that Knaub "has not consistently engaged in substantial gainful activity since January 1, 1999 (20 CFR § 404.1520(b))." Tr. 21.  The administrative law judge stated that "[a]lthough the claimant has occasionally worked above substantial gainful activity levels, as most of his work has been below substantial gainful activity levels, it is necessary to proceed in the sequential evaluation process." Tr. 21.

At step two, the administrative law judge found that Knaub suffers from the following severe impairments: anxiety, a

---

7.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

lumbar strain with mild scoliosis, and irritable bowel syndrome.
Tr. 21.  The administrative law judge found that "attention
deficit hyperactivity disorder to not be medically determinable"
and that Knaub was not impaired by that disorder. Tr. 24

    At step three, the administrative law judge found that
Knaub's impairments individually or in combination did not meet or
equal a listed impairment. Tr. 22.

    At step four the administrative law judge found that
Knaub had the residual functional capacity to

> lift and carry up to ten pounds frequently and up to 20
> pounds occasionally.  He has no limitations in his
> ability to stand, walk, or sit during the workday.
> He can push and pull up to twenty pounds with his
> extremities.  He can frequently bend, reach overhead,
> climb, balance, and stoop.  In addition to simple
> repetitive work, he can also perform detailed work
> and low level complex work.  He is precluded from
> high stress employment and is precluded from
> dealing with the public.  He can handle moderate
> stress employment so long as he does not have any
> confrontational settings.  He can work at an average
> level of pace but can not work at a high pace, such
> as what would be required for piece work.  He can
> perform work that requires moderate levels of
> concentration.  He can not work at jobs that do not
> allow unscheduled restroom breaks due to irritable
> bowel syndrome.

Tr. 22.  The administrative law judge in essence limited Knaub to
light work.[8]  The administrative law judge found that Knaub had

---

8.  Light work "involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10
pounds.  Even though the weight lifted may be very little, a job
is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls.  To be considered
capable of performing the full or wide range of light work, you
                                             (continued...)

no past relevant work experience.  Tr. 24.  With respect to this finding the administrative law judge stated: "As most of the claimant's past work has not been at substantial gainful activity levels, the undersigned resolves this issue in the claimant's favor."  Tr. 24.

At the fifth step of the sequential evaluation process, the administrative law judge concluded that in light of Knaub's residual functional capacity, age, and education, there were a significant number of jobs in the national economy which he could perform, such as stuffer, bench assembler and examiner/inspector, and he, therefore, was not disabled. Tr. 25-26.

We have thoroughly reviewed the administrative record and have concluded for the reasons outlined below that the decision of the Commissioner should be vacated and the case remanded to the Commissioner for further proceedings.  We will briefly  review the evidence, including evidence relating to Knaub's employment and medical history, and then specify the errors committed by the administrative law judge in evaluating the evidence.

---

8. (...continued)
must have the ability to do substantially all of these
activities.  If someone can do light work, we determine that he
or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to
sit for long periods of time."  20 C.F.R. § 404.1567(b).

At the time of the hearing before the administrative law
judge, Knaub was 19 years of age.  Tr. 626.  For many years Knaub
has been treated by a team consisting of a psychiatrist, a
psychologist and a therapist.  Tr. 258-330, 380, 456-536, 539-542,
560- 566, and 574.  Knaub's therapist was Lynn Hunter, M.A., who
worked for Yorkshire Counseling Associates, York, Pennsylvania,
under the supervision of G. F. Hunter, Ph.D., a licensed clinical
psychologist.  Tr. 463 and 561.  The administrative record
contains a summary of Knaub's history prepared by Ms. Hunter.  Tr.
463-465.

Knaub developed severe social phobia when he was in
grade school.  Tr. 313, 353, and 463-464.   The phobia worsened to
the point of panic disorder and agoraphobia, accompanied by
migraines and nausea.  Tr. 313, 316-330 and 463.   Specifically,
on January 28, 1999, Douglas N. Chen, M.D., a psychiatrist with
York Psychiatry Associates, York, Pennsylvania, issued a letter in
which he stated that Knaub was suffering from panic disorder with
agoraphobia, major depression and migraine cephalgia. Tr. 315.
On January 29, 1999, Dr. Chen recommended that Knaub "be placed on
homebound education for the next six weeks secondary to panic
disorder with agoraphobia, major depression and migraine
cephalgia." Tr. 316.   Because Knaub suffered from panic disorder
with agoraphobia, major depression and migraine cephalgia his
public school paid for him to be taught at home by tutors from

third through the first half of eighth grade.  Tr. 219, 355, 359, 363-65, 463-464.

During the second half of eighth grade, he returned to the classroom on a part-time basis with special accommodations and learning support, but then relapsed toward the end of the school year with a severe panic attack on May 19, 2000, which resulted in being taken to the York Hospital Crisis Center.  Tr. 219-220, 261-266 and 323.  On June 5, 2000, Dr. Chen issued a letter to the school stating as follows:

> As you know, Devin Knaub is a patient of mine.  Until May 19th Devin had been able to attend school part-time. The incident at school on May 19th has caused a setback in Devin's progress.  Please excuse any absences from May 22nd to the end of the school year.

Tr. 325.  Knaub commenced the ninth grade (2000-2001) attending regular classes.  However, on the second day of school Knaub had difficulty as a result of his mental condition and was thereafter home schooled during ninth grade.  Tr. 221 and 326-330. Throughout the 2000-2001 school year Dr. Chen noted that Knaub suffered from agoraphobia, panic disorder and severe migraines. Tr. 326-330.

For the tenth grade (2001-2002 school year) Knaub was enrolled in Manito Academy, York, Pennsylvania, a school for students with emotional difficulties.  Tr. 367-379 and 464. The classes at Manito were small and informal and the staff was trained to deal with children with severe emotional difficulties.

Tr. 464.  Knaub learned to function in this protected and structured environment, receiving his high school diploma in 2004.

Knaub held several part-time jobs during his high school years.  Tr. 78    He earned $1015.52 in 2001, $3290.33 in 2002, $3026.40 in 2003, and $7411.91 in 2004.  Tr. 78.   In 2001 and 2002, Knaub worked for Domino's Pizza; in 2003 he worked for Sears, Roebuck & Company for a brief period of time (earning $325.75) and Chuck E. Cheeses (earning $2700.65).  Tr. 80-81. There is a handwritten notation in the administrative record that he worked for Domino's Pizza from September, 2001, to September 2002; he worked for Chuck E. Cheeses from June, 2003 to October, 2003; he worked for Sears, Roebuck & Company from November, 2003 to December, 2003; and he worked for Superpetz 12-15 hours per week commencing in February, 2004, earning $5.50 per hour.  Tr. 80-81.  Another document in the administrative record conflicts slightly with those handwritten notations.  Tr. 94.  A document which we will refer to as an "employment table" indicates that Knaub worked for Chuck E. Cheeses in August, September, October and November, 2003; he worked for Sears, Roebuck & Company in December, 2003 and part of January, 2004; he worked for Superpetz part of January, 2004, and in February, March, April, May, June and part of July, 2004; and he worked for WalMart (Sam's Club) part of July, 2004, and August, 2004, through July, 2005.  Tr. 94.

After Knaub graduated from high school, he attended
Thaddeus Stevens College of Technology, Lancaster, Pennsylvania,
pursuing an associate degree in architecture. Tr. 546, 631 and
634.   As noted above Knaub attempted to work part-time while
attending Thaddeus Stevens College of Technology.   Knaub was
permitted to take his 2-year course work over 3 years because of
his special needs.  Tr. 546.  On July 25, 2005, Debra A. Schuch,
Counselor/Special Needs Coordinator, at Thaddeus Stevens College
of Technology issued a letter which states in pertinent part as
follows:

> Devin was offered the opportunity to complete his
> two year program of study over a three year period,
> due to his need for accommodations.  Devin experiences
> anxiety and stress in social situations, and becomes
> highly distracted and uncertain at these times.
> Further he had attended an alternative school, and
> was not accustomed to the independence and pace
> expected in college.  By providing Devin with tutorial
> supports, counseling and an extended completion time
> he has been able to demonstrate academic success to
> date.
>
> Devin has struggled in algebra which is a critical
> academic course for his architectural program.  It was
> important for him to demonstrate success in the
> remedial course prior to starting his program of study.
> He needed to take this course twice before he was able
> to master the concepts.

Tr. 546.  Thaddeus Stevens College of Technology also gave Knaub
accommodations in the form of extended time to take tests,
distraction-free environment for test-taking, supportive tutoring,
counseling, monitoring, and assistance in taking notes.  Tr. 196-
197.  Knaub testified at the hearing before the administrative law
judge that he cannot concentrate in class or during a test if

12

there is any background noise or if the teacher is walking around. Tr. 632-633 and 653.

Knaub's sister is a special education teacher. Tr. 549. She wrote that her brother cannot make friends easily and has only a few friends, that when he participates in group activities he needs to do things his way and, if he cannot, he panics and is likely to walk away or yell something inappropriate, that he needs to have instructions repeated and is easily overwhelmed, that he is overwhelmed trying to deal with changes in his routine and obsesses over making decisions, that he is easily distracted by external factors and by his own worries about what people are doing or saying, that he has difficulty performing his activities of daily living, and that he needs his mother to supervise his housekeeping, laundry, shopping, cooking and bill paying. Tr. 550-554. Knaub admits that he has these difficulties. Tr. 169, 170 and 173-175.

The record reveals that Knaub had difficulty at all of the jobs that he held. Knaub testified that anxiety causes him to need additional and unscheduled breaks during which he goes to the bathroom for about 15 minutes, or sometimes goes to his car to "collect himself." Tr. 634 and 639. Sometimes he cannot control his anxiety even after temporarily removing himself from the work site and, therefore, he goes home early. Tr. 655 and 658-659. Knaub has been reprimanded for taking such "unnecessary breaks." Tr. 659. If he has an anxiety or panic attack, it usually

13

progresses to a migraine causing absenteeism from work.  Tr. 646-648 and 651.  He has missed work from such migraines as frequently as once a week.  Tr. 646.

Knaub quit three part-time jobs within a few months because of severe anxiety.  Tr. 186-189 and 464.  He had panic attacks and started shaking, crying, and pacing.  Tr. 645.  His irritable bowel would flare up and he had diarrhea.  Tr. 646. While employed at Domino's Pizza he got upset, threw a pizza on the floor, and walked out in the middle of his shift.  Tr. 642-643.  At the time of the hearing before the administrative law judge, Knaub was working for WalMart (Sam's Club) and during that employment he took unscheduled breaks when he got anxious and called in sick when anxiety became too great.  Tr. 648-651.  As a result, he had excessive absenteeism and was at a risk of being fired for further absences.  Tr. 229-232 and 649.  Knaub and his mother testified that when he worked three consecutive days, he had to spend his days off in bed or on the sofa, too exhausted and stressed to interact with people or do anything.  Tr. 629 and 647.

On the advice of a psychiatrist, Knaub tried to cut back his work hours to approximately 20 per week even when he was not in school, in an effort to minimize his symptoms.  Tr. 456.  On July 6, 2005, Dr. Chen issued a letter which states as follows: "Devin is under my care since January 28, 1999.  Please limit his hours of work to approximately 20 hours per week."  Tr. 456.

Dr. Hunter and Ms. Hunter, who both treated Knaub from February 17, 1999, through the time of the hearing before the administrative law judge, completed a "Mental Medical Source Statement" in which they found that Knaub was

1) markedly limited with respect to his ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and pay household bills and manage own funds;

2) moderately limited with respect to his ability to interact appropriately with the general public, maintain socially appropriate behavior, keep a residence clean and repaired, and use telephones, directories, post offices, etc.; and

3) not significantly limited with respect to his ability to ask simple questions and request assistance, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and prepare meals.

Tr. Tr. 533-536. They also found that Knaub had three or more episodes of deterioration or decompensation, lasting two weeks or more and causing him to withdraw from the situation, or experience

exacerbation of signs and symptoms, with an accompanying difficulty in maintaining activities of daily living, social relationships and/or concentration, persistence or pace or suffer a deterioration of adaptive behavior.  Tr. 536.

Dr. Chen who treated Knaub from January 28, 1999, through the time of the hearing before the administrative law judge, completed a "Mental Medical Source Statement" in which he found that Knaub was

> 1) Markedly limited with respect to his ability to perform at a consistent pace, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and pay household bills and manage own funds;
>
> 2) moderately limited with respect to his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentrations for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual, work near or with others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers, maintain socially appropriate behavior, prepare meals and keep a residence clean and

      repaired; and

      3) not significantly limited with respect to his
      ability to ask simple questions and request
      assistance, adhere to basic standards of neatness and
      cleanliness, be aware of normal hazards and take
      appropriate precautions, shop, and use telephones,
      directories, post offices, etc.

Tr. 539-542. Dr. Chen also found that Knaub had three or more episodes of deterioration or decompensation, lasting two weeks or more and causing him to withdraw from the situation or experience exacerbation of signs and symptoms, with an accompanying difficulty in maintaining activities of daily living, social relationships and/or concentration, persistence or pace or suffer a deterioration of adaptive behavior. Tr. 542.

The record reveals that Drs. Chen and Hunter and Ms. Hunter were part of a team that treated Knaub over an extended period. Tr. 542 and 560. At the bottom of page 542 of the administrative record, Dr. Chen notes that Knaub's "[p]rimary therapist (Lynn Hunter) is in the same office. Patient discussed (illegible), regularly." Drs. Chen and Hunter shared the same suite of offices at 1030 Plymouth Road, York, Pennsylvania. Tr. 326 and 560. Dr. Hunter, a licensed clinical psychologist, on August 9, 2005, issued a letter which stated as follows:

      I am writing to explain how our office handles our
      clients. Lynn Hunter and I are a treatment team.
      Mrs. Hunter works under my license and I am
      responsible for the quality of her work and I

> also am responsible to review and supervise the
> treatment plan and therapy sessions.
>
> Devin's treatment has been long and difficult.
> I have known Devin for seven years.  I have sat
> in sessions and spoken to him before and after
> sessions and also communicated on the phone if a
> problem arose.  This enables me to monitor
> Devin's functioning and see if any changes need
> to be made.
>
> Lynn Hunter was able to establish a very positive
> relationship with Devin.  This allowed Devin to
> go forward and Devin began to improve.  There have
> been many people who have also worked with Devin
> and they are part of the team.  The teachers who
> tutored Devin while at home, the counselors at
> Manito, Dr. Chen who prescribed and monitored his
> medications, and Devin's family doctor, and many
> more.
>
> At this time in Devin's life he will be unable to
> work full time even when he is not attending
> school.  The anxiety, panic attacks and migraines
> continue.  Devin will be unable to cope with
> stress beyond a given level.

Tr. 560.

On August 13, 2005, Ellis D. Berkowitz, who holds a master's degree in social work and is a licensed clinical social worker, examined Knaub and performed diagnostic testing.  The diagnostic test performed by Mr. Berkowitz was the Test of Variable of Attention (TOVA) which "is a computerized auditory continuous performance test for the diagnosis and treatment of children and adults with attention disorders."  Tr. 570.  Mr. Berkowitz determined that Knaub suffers from attention deficit hyperactivity disorder based on his examination and diagnostic testing of Knaub. Tr. 569-573.  On August 16, 2005, Dr. Hunter

issued a letter stating that he agreed with Mr. Berkowitz's assessment. Tr. 574.[9]

On June 8, 2004, Soraya Amanullah, Ph.D., a consultant for the Social Security Administration performed a psychiatric review and mental residual functional capacity assessment based on the written medical records.  Tr. 331347.  She did not do an in person examination of Knaub and consequently did not perform any psychological diagnostic testing on Knaub.  Dr. Amanullah appears to have determined that Knaub suffers from anxiety and obsessive compulsive disorder. Tr. 333.  With respect to functional limitations, Dr. Amanullah found that Knaub had mild limitations with regard to activities of daily living and moderate difficulties in maintaining social functioning, and maintaining concentration, persistence and pace.  She further found there were no repeated episodes of decompensation of extended duration.  Tr. 345.  With respect to Knaub's mental residual functional capacity assessment Dr. Amannulah found that he was  moderately limited with respect to the ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism

---

9.  Mr. Berkowitz has been accepted as an expert witness with respect to attention deficit hyperactivity disorder by the Disciplinary Board of the Pennsylvania Supreme Court. <u>See</u> http: // www.aopc.org/OpPosting/disciplinaryboard/dboardopinions/ 55DB2003-Durney.pdf.

from supervisors, and respond appropriately to changes in the work setting; and not  significantly limited with respect to all the other criteria set forth in the checklist relating to mental residual functional capacity.  Tr. 331-332.  In an explanation of her findings set forth in the checklist Dr. Amanullah stated in pertinent part as follows:

> Neither long nor short term memory is significantly impaired.  He remains capable of understanding and remembering instructions, concentrating, interacting appropriately with people and adapting to changing activities within the workplace.  He has difficulty working with or near other employees without being distracted by them.  He is able to carry out very short and simple instructions.  Moreover, he could be expected to complete a normal workday without exacerbation of psychological symptoms.  He experiences social anxiety and discomfort around strangers. Additionally, he is socially isolated.  He has a history of frequent panic attacks.  He is capable of asking simple questions and accepting instructions. He is able to get along with others in the workplace without distracting them.  Furthermore, he can sustain an ordinary routine without special supervision.  He can function in production oriented jobs requiring little independent decision making.  He evidences some limitation in dealing with work stresses and public contact.  He retains the ability to perform repetitive work activities without constant supervision.

> *    *    *    *    *    *    *    *    *    *    *

> The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment.

Tr. 333.

Dr. Amanullah's assessment as noted, in contrast to the assessments of Drs. Hunter and Chen, and Mr. Berkowitz was based only on her review of the written records.  The administrative law judge notably assigned "limited weight" to Dr. Amanullah's opinion

because she "did not have a good longitudinal picture of the case."  Tr. 24.  However, he also discounted the opinions of Drs. Hunter and Chen and Mr. Berkowitz. Tr. 21-23.

We will now review the errors committed by the administrative law judge which require us to remand this case to the Commissioner for further proceedings.   In this case the administrative law judge found that attention deficit hyperactivity disorder was not "medically determinable."  This was clear error on the part of the administrative law judge in light of the fact that the only expert opinions in the record indicated that Knaub did suffer from that condition.

The preference for the opinions of treating physicians or psychologists has been recognized by the Court of Appeals for the Third Circuit and for that matter by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000).   When the opinons of treating physicians or psychologist conflict with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason."  Id.  In choosing to reject the evaluation of a treating physician or psychologist, an administrative law judge may not make speculative inferences from medical reports and may reject the opinions of the treating physicians and psychologists outright only on the basis of contradictory medical evidence not based on his or her own

credibility judgments, speculation or lay opinion.  Id.  An
administrative law judge may not, as he did in this case,
disregard the opinions of treating physicians and psychologist
based solely on his own "amorphous impressions, gleaned from the
record and from his evaluation of the [claimant]'s credibility."
Id.

   The administrative law judge did not include attention
deficit hyperactivity disorder as an impairment at step two or
step three of the sequential evaluation process.  Consequently, we
are not satisfied that the administrative law judge appropriately
determined that Knaub does not have an impairment of combination
of impairments that meet or medically equal one of the listed
impairments.

   The administrative law judge, as noted earlier in this
order, found that one of Knaub's severe impairments was anxiety.
Such an impairment can be considered a listed impairment if
certain criteria are met. The Social Security regulations explain
the purpose of the listings as follows:

> The Listing of impairments (the listings) is in
> appendix 1 of this subpart.  It describes for each
> of the major body systems impairments that we consider
> to be severe enough to prevent an individual from
> doing any gainful activity, regardless of his or her
> age, education, or work experience.

20 C.F.R. § 404.1525.  Anxiety related disorders are listed at
12.06 of 20 C.F.R., Subpart P, Appendix 1, which states as
follows:

12.06 *Anxiety Related Disorders:* In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3.  Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

Dr. Amanullah found, *inter alia*, that with respect to anxiety related disorders Knaub had recurrent obsessions and compulsions which are a source of marked distress (meeting the A.4. criteria above) and Dr. Chen found that Knaub had marked difficulties in maintaining concentration, persistence or pace (meeting the B.3 criteria above) and repeated episodes of decompensation, each of an extended duration (meeting the B.5 criteria above). Dr. Hunter also found, *inter alia*, that Knaub had repeated episodes of decompensation each of an extended duration.  The administrative law judge did not explain adequately why Knaub's severe anxiety did not meet Listing 12.06.

The Social Security regulations set forth rules for how administrative law judges are to consider the opinions of treating physicians and psychologists.  20 C.F.R. § 1527(d) provides in pertinent part as follows:

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more

24

> weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals
> most able to provide a detailed, longitudinal picture of
> your medical impairment[s] and may bring a unique
> perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or
> from reports of individual examinations, such as
> consultive examinations or brief hospitalizations. . . .

The administrative law judge's decision in this case is vague as
to whether he considered Dr. Hunter a treating source under the
regulations.

During the administrative hearing, the administrative
law judge berated Knaub's attorney for utilizing a residual
functional capacity assessment form signed by Ms. Hunter and
cosigned by Dr. Hunter.  Tr. 621.  At another point in referring
to Dr. Hunter, the administrative law judge stated as follows:

> The regulations require a treating source, he's not a
> treating source, it doesn't even make the straight face
> test to laugh about it.

Tr. 669.  This observation by the administration law judge was
clearly erroneous.  Dr. Hunter in his letter of August 9, 2005,
explained that he and Ms. Hunter worked as a treatment team and
that he had the responsibility for the quality of her work and to
review and supervise the treatment of Knaub.  Tr. 560.  Dr. Hunter
noted that he knew Knaub for seven years, sat in therapy sessions
and spoke to him before and after sessions.  Dr. Hunter was a
treating source.  Cf. Shontos v. Barnhart, 328 F.3d 418, 426 (8th
Cir. 2003)(administrative law judge erred in discounting opinions
of treating mental health providers who worked as a team in
providing treatment to a claimant).

25

We are also not satisfied that the administrative law judge appropriately evaluated the credibility of Knaub or the credibility of his mother.  The administrative law judge focused on selected facts out of context to discredit Knaub, such as the fact that Knaub had a girlfriend (who herself has emotional problems), has a few friends, and engages in certain hobbies. However, sporadic activities have long been considered by the Court of Appeals for this circuit as not establishing the ability to work. Smith v. Califano, 637 F.2d 968 (3d Cir. 1981); Wright v. Sullivan, 900 F.2d 675 (3d Cir. 1990).  Knaub's ability to find some enjoyment in some activities is not a basis to find that he has no credibility and has the ability to work. Id.  As this court has noted "the law does not require a complete restriction from recreational and other activities as a prerequisite to a finding of disability." Rieder v. Apfel, 115 F.Supp.2d 496, 504-505 (M.D.Pa. 2000)(Munley, J.).

The decision of the Commissioner is not supported by substantial evidence. Consequently, the decision of the Commissioner denying Devin M. Knaub social security benefits will be vacated and the case will be remanded to the Commissioner for a new hearing.

NOW, THEREFORE, IT IS ORDERED THAT:

1.  The Clerk of Court shall enter judgment in favor of Devin M. Knaub and against Michael J. Astrue, Commissioner of Social Security, as set forth in the following paragraph.

2.   The decision of the Commissioner of Social Security denying Devin M. Knaub social security disability benefits is vacated and the case remanded to the Commissioner of Social Security to:

2.1 Conduct a new administrative hearing and appropriately evaluate the medical and psychological evidence and the credibility of Devin M. Knaub and his mother in accordance with the background of this order.

3.   The Clerk of Court shall close this case.


s/Malcolm Muir
MUIR
United States District Judge

MM:gs